1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

AL GENE FISHER, Jr.,

12

Plaintiff,

13

v.

14

T. GALYEN, *et al.*,

15

Defendants.

16

Case No.  2:22-cv-01952-JDP (PC)

SCREENING ORDER THAT PLAINTIFF:

(1)   PROCEED ONLY WITH CLAIMS
FOUND COGNIZABLE BELOW, OR

(2)   DELAY SERVING ANY
DEFENDANT AND FILE AN
AMENDED COMPLAINT

ECF No. 1

THIRTY-DAY DEADLINE

ORDER GRANTING PLAINTIFF'S
APPLICATION TO PROCEED *IN FORMA
PAUPERIS*

ECF No. 2

17

18

19

20

21

22

23

        Plaintiff Al Gene Fisher, Jr., a state prisoner proceeding without counsel under 42 U.S.C.

24

§ 1983, alleges that several defendants—all employees of California State Prison, Sacramento,

25

violated his rights under the First and Eighth Amendments.  His allegations are sufficient to state

26

cognizable claims against most of the defendants, though some of his Eighth Amendment claims

27

are insufficient for reasons stated below.  Plaintiff must choose whether to proceed only with the

28

1  claims found cognizable herein or delay serving any defendant and file an amended complaint.  I

2  will grant his application to proceed *in forma pauperis*.  ECF No. 2.

3  **Screening and Pleading Requirements**

4       A federal court must screen a prisoner's complaint that seeks relief against a governmental

5  entity, officer, or employee.  *See* 28 U.S.C. § 1915A(a).  The court must identify any cognizable

6  claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a

7  claim upon which relief may be granted, or seeks monetary relief from a defendant who is

8  immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

9       A complaint must contain a short and plain statement that plaintiff is entitled to relief,

10  Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its

11  face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard does not

12  require detailed allegations, but legal conclusions do not suffice.  *See Ashcroft v. Iqbal*, 556 U.S.

13  662, 678 (2009).  If the allegations "do not permit the court to infer more than the mere

14  possibility of misconduct," the complaint states no claim.  *Id.* at 679.  The complaint need not

15  identify "a precise legal theory."  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024,

16  1038 (9th Cir. 2016).  Instead, what plaintiff must state is a "claim"—a set of "allegations that

17  give rise to an enforceable right to relief."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264

18  n.2 (9th Cir. 2006) (en banc) (citations omitted).

19       The court must construe a pro se litigant's complaint liberally.  *See Haines v. Kerner*, 404

20  U.S. 519, 520 (1972) (per curiam).  The court may dismiss a pro se litigant's complaint "if it

21  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

22  would entitle him to relief."  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).

23  However, "'a liberal interpretation of a civil rights complaint may not supply essential elements

24  of the claim that were not initially pled.'"  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251,

25  1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

26  **Background**

27       Plaintiff first alleges that on January 9, 2022, defendants Galyen, Martell, and an

28  unidentified officer loudly accused him of masturbating to "Mrs. Gaylen" and of being a sex

offender.  ECF No. 1 at 6.  He thereafter received a "kite (note)" stating that Martell had been

telling other inmates that he was a sex offender and that he "need[ed] to go," which plaintiff took

to mean that he needed to be "hurt" or "sent to hospital [sic]."  *Id.*  He specifically states that

Martell spoke to an inmate named Jetton, but he does not say what Martell said to him or whether

Jetton sent the kite.  *Id.*  On January 14, defendant-officers Galyen and Ngyuen, defendant-

lieutenant Abarca, and defendant-sergeants Aguilar and Uribe allegedly searched plaintiff's cell,

"trashed" it, and "stole [his] personal property," including irreplaceable photos of dead relatives.

*Id.*  He adds that defendants Kurgan, Martell, Galyen, Uribe, Nguyen, Aguilar, Abarca, and others

told other inmates that he "was a snitch, child molester, rapist, and sex offender . . . in an attempt

to have [him] hurt or killed."  *Id.* at 7.

He claims that these actions constitute retaliation in violation of the First Amendment,

although his allegations are somewhat imprecise as to the retaliatory motives of each defendant.

He alleges that the search was "in retaliation of false allegation of masturbating on [January

ninth]," and because he filed a complaint after that incident, and because he signed a sworn

witness declaration in support of a lawsuit against certain officers—he does not say which

defendants in this case, if any, are also defendants in that case.  *Id.* at 6.  He indicates that, after he

signed the declaration, these defendants repeatedly called him a "snitch" in front of other inmates.

*Id.*  He also states that, after filing a complaint pursuant to the Prison Rape Elimination Act

("PREA") on January 21, he faced "constant harassment and retaliation."  *Id.*

On May 5, Jetton attacked plaintiff, landing at least three blows before plaintiff was able

to protect himself, causing "head and facial injuries" and a laceration on his upper lip that

required five sutures.  *Id.* at 7.  Plaintiff states that that he had "filed numerous complaints

notifying administration" about the accusations and that he was concerned for his safety.  *Id.*  He

alleges that no action was taken to protect him, such as removing him from the yard.  *Id.*  He

alleges that "officers, T. Guerra, Tapia, Martin, [and] Shultz, all allowed inmate Jetton to assault"

him before eventually intervening with "an outrageous amount of chemical weapons" and

"[seven] blast grenades," triggering plaintiff's asthma.  *Id.* at 7-8.

He then alleges that several other officers—defendants Stigelmeyer, Joseph, Diaz, and Kendall—refused to provide him treatment and instead placed him in a standing-room only holding cage for eleven hours and fifty minutes. *Id.* In that time, they allegedly denied him access to a bathroom, gave him only one glass of water, and refused medical attention for his injuries, his asthma, or his chronic back pain—which was allegedly aggravated by being forced to stand for so long. *Id.* With respect to his medical care claim, he alleges that Stigelmeyer, Joseph, Diaz, and Kendall "lied and said [he] refused" treatment, although he does not explain when or to whom they directed this lie. *Id.* at 8. He alleges that he complained to defendant Tapia about his asthma "to no avail," and that he generally begged Tapia, Diaz, Joseph, and Kendall for medical attention. *Id.* at 9. He alleges that he was evaluated by a nurse, defendant Alex, and that she ignored his complaints of asthma and "injuries to [his] head, face, jaw, lip, elbows, and knees," and later falsified her report by stating that he had no injuries. *Id.* He alleges that another nurse, defendant Amavisca, attempted to render treatment, but that defendant Stigelmeyer—a lieutenant—denied him access to plaintiff and falsely claimed that they were going to take plaintiff to the hospital. *Id.* He alleges that defendants Amavisca and Xiong, another nurse, falsified a form by indicating that plaintiff refused treatment. *Id.* He alleges that he was finally taken to the clinic, and subsequently to U.C. Davis hospital, after suffering a mental breakdown and telling "mental health" that he was suicidal and needed medical attention. *Id.* at 8-9.

**Analysis**

As an initial matter, plaintiff's allegations are somewhat challenging to parse. Although I find the bulk of his claims sufficient to survive screening, his allegations would be benefit significantly from additional factual detail. Despite alleging multiple claims against nearly twenty defendants, his factual allegations comprise only four pages of writing on CDCR-provided claim forms. *See id.* at 6-9. If he chooses to amend his complaint, he should provide a more thorough narrative that lays out all the relevant facts in the order in which they occurred, and he should state the involvement of, and all relevant facts about, each defendant. After providing

such a narrative, plaintiff should state each legal claim and list the defendants against whom each claim is alleged.[1]

Liberally construing plaintiff's allegations, he has alleged potentially cognizable claims of retaliation under the First Amendment and multiple claims under the Eighth Amendment. However, as explained below, some of his Eighth Amendment claims are insufficiently pled.

First, his allegations state potentially cognizable First Amendment retaliation claims against defendants Galyen, Martell, Ngyuen, Abarca, Aguilar, Kurgan, and Uribe.  "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (holding that plaintiff need not prove that he was actually chilled; it is enough that the adverse action would chill a person of ordinary firmness).

Plaintiff alleges multiple protected activities: complaints about the false accusations, a grievance filed pursuant to PREA, and a sworn witness declaration in support of other litigation. ECF No. 1 at 6; *see Brodheim v. Cry*, 584 F.3d 1262, 1267 n.4 (9th Cir. 2009) (holding that even informal grievances are protected, since "[t]he applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint").  He alleges that because of these activities, defendants Galyen, Ngyuen, Abarca, Aguilar, and Uribe searched plaintiff's cell, "trashed" it, and "stole [his] personal property"; moreover, he alleges that those defendants, along with defendants Martell and Kurgan, called him "a snitch, child molester, rapist, and sex offender."  ECF No. 1 at 6-7.  Although plaintiff's allegations are somewhat imprecise—not specifying, for example, when each defendant called him a snitch or a sex offender—his allegations are sufficient at this stage to state cognizable retaliation claims.  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that allegations that

---

[1] Plaintiff is advised that, if he cannot fit his allegations on the complaint forms that he has been provided, he may use as many additional pages as necessary.  He should write legibly with space between each word and each line.

1    prison officials "conspired to label [the plaintiff] a 'snitch' and thereby subject him to retaliation

2    by inmates" violates the First Amendment).

3          Plaintiff also alleges claims of deliberate indifference to his safety under the Eighth

4    Amendment.  *See Farmer v. Brennan*, 511 U.S. 825 (1994) ("Prison officials have a duty to

5    protect prisoners from violence at the hands of other prisoners.").  His allegation that Galyen,

6    Martell, Ngyuen, Abarca, Aguilar, Kurgan, and Uribe called him a "snitch, child molester, rapist,

7    and sex offender . . . in an attempt to have [him] hurt or killed" is sufficient to state an Eighth

8    Amendment claim, because it indicates that they knew of and disregarded an excessive risk to his

9    safety.  *See Nailing v. Fosterer*, No. CIV S-09-2475-MCE, 2012 WL 1130655, at *8 (E.D. Cal.

10   Mar. 2, 2012) (holding that filing a chrono that reveals a plaintiff to be a sex offender evinces

11   deliberate indifference "to the generally known risk sex offenders face in the prison general

12   population"); *Morris v. Burkhouse*, No. CV 19-5839-SVW (KK), 2021 WL 2119497, at *4 (C.D.

13   Cal. March 24, 2021) (holding that the defendants were deliberate indifferent to a substantial risk

14   of harm when they "identified [the plaintiff] to the entire prison population as sex offender").

15         However, his remaining failure-to-protect claims are insufficiently pled.  He states that he

16   reported his safety concerns to the administration after being called a "snitch, child molester,

17   rapist, and sex offender," but he fails to specify who received these reports or whether any other

18   defendants had been notified about his safety concerns.  *See* ECF No. 1 at 7.  Likewise, his

19   allegation that defendants Guerra, Tapia, Martin, and Shultz "allowed inmate Jetton to assault"

20   him is too vague and conclusory to state a claim.  *Id.*  He provides no facts, other than that they

21   eventually intervened, to find that they knew about the attack before or during the time that it

22   occurred and still chose not to intervene.  *See Bonnette v. Dick*, No. 18-0046, 2020 WL 3412733,

23   at *3 (E.D. Cal. June 22, 2020) (explaining that allegations do not provide sufficient notice when

24   they "fail to adequately describe specific actions taken by each of the defendants named in the

25   complaint").

26         His claim that Guerra, Tapia, Martin, and Shultz used excessive force is on stronger

27   footing.  Construing his allegations liberally, he alleges that they intervened in a fight between

28   two unarmed inmates with "an outrageous amount of chemical weapons" and "[seven] blast

grenades." ECF No. 1 at 7-8. This is sufficient to state an excessive force claim under the Eighth Amendment against all four defendants. *See Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003) (holding that a prison guard violated the Eighth Amendment when he shot live rounds at "a passive, unarmed inmate standing near a fight between other inmates, none of whom was armed, when no inmate was in danger of great bodily harm").

Plaintiff's remaining allegations state cognizable Eighth Amendment deliberate indifference claims against defendants Stigelmeyer, Joseph, Diaz, Kendall, Tapia, and Alex. He alleges that they—without defendant Alex, a nurse who arrived later—took him from the site of the attack and placed him in a standing-room only holding cage for eleven hours and fifty minutes. ECF No. 1 at 9. In that time, they allegedly denied him access to a bathroom, gave him only one glass of water, and refused to provide medical attention for his injuries, back pain, and asthma. *Id.* He adds that defendant Alex provided a superficial medical evaluation but otherwise ignored his complaints and refused him necessary treatment. These claims could be characterized as claims for unconstitutional conditions of confinement, denial of adequate medical care, or both; in any case, the question is "whether the officials involved acted with deliberate indifference to [plaintiff's] health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal marks and citations omitted). Plaintiff's allegations meet this standard. *See id.* at 737 & 742 (explaining that corporal punishment, such as "handcuffing inmates to the fence and to cells for long periods of time, and forcing inmates to stand, sit or lie on crates, stumps, or otherwise maintain awkward positions for prolonged periods . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment"); *Harrison v. Sample*, 359 F. App'x 893, 894 (9th Cir. 2009) (holding that deliberate indifference to complaints of "a medical emergency due to asthma" violates the Eighth Amendment).

Finally, his allegations against nurses Amavisca and Xiong are not cognizable as alleged. Amavisca allegedly attempted to render treatment but was turned away by defendant Stigelmeyer; and, some later time, Amavisca and Xiong allegedly reported that plaintiff had refused treatment. ECF No. 1 at 9. These allegations support his claim against Stigelmeyer, but they do not show that either Amavisca or Xiong were deliberately indifferent to his medical needs. Indeed, the

1    allegations indicate that Amavisca attempted to treat plaintiff, and the allegations do not address

2    Xiong's actions or whereabouts.  Even assuming that the relevant report was written in bad

3    faith—an assumption not necessarily supported by the allegations—plaintiff does not say what

4    harm, if any, the false report caused him.  *Cf. Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

5    (requiring a showing of "harm caused by the indifference").

6          In summary, the following claims are sufficient to survive screening as they are currently

7    pled: (1) First Amendment retaliation claims against defendants Galyen, Martell, Ngyuen,

8    Abarca, Aguilar, Kurgan, and Uribe; (2) Eighth Amendment deliberate indifference claims

9    against Galyen, Martell, Ngyuen, Abarca, Aguilar, Kurgan, and Uribe; (3) Eighth Amendment

10   excessive force claims against Guerra, Tapia, Martin, and Shultz; and (4) Eighth Amendment

11   deliberate indifference claims against defendants Stigelmeyer, Joseph, Diaz, Kendall, Tapia, and

12   Alex.  The following claims are insufficient to survive screening: (1) deliberate indifference

13   claims against any unidentified prison administrators arising from his reported safety concerns;

14   (2) deliberate indifference claims against Guerra, Tapia, Martin, and Shultz; (3) deliberate

15   indifference claims against defendants Amavisca and Xiong.

16         Within thirty days, plaintiff must either advise that he wishes to proceed only with his

17   cognizable claims or delay serving any defendant and file and amended complaint.  If he decides

18   to file an amended complaint, the amended complaint will supersede the current complaint.  *See*

19   *Lacey v. Maricopa Cnty.*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc).  This means that the

20   amended complaint will need to be complete on its face without reference to the prior pleading.

21   *See* E.D. Cal. Local Rule 220.  Once an amended complaint is filed, the current complaint no

22   longer serves any function.  Therefore, in an amended complaint, as in an original complaint,

23   plaintiff will need to assert each claim and allege each defendant's involvement in sufficient

24   detail.  The amended complaint should be titled "First Amended Complaint" and refer to the

25   appropriate case number.

26         Accordingly, it is ORDERED that:

27         1.  Plaintiff's application to proceed *in forma pauperis*, ECF No. 2, is granted.

28

8

2.  Within thirty days from the service of this order, plaintiff must either advise that he wishes to proceed only with his cognizable claims or delay serving any defendant and file an amended complaint.

3.  Failure to comply with this order may result in the dismissal of this action.

4.  The Clerk of Court is directed to send plaintiff a complaint.

IT IS SO ORDERED.


Dated:    February 21, 2023                                        _____
                                                                                JEREMY D. PETERSON
                                                                                UNITED STATES MAGISTRATE JUDGE

9